**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Infinque Jamison, individually, and on behalf of those similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Demand for Jury Trial** |
| Arizona Beverages USA LLC and Hornell Brewing Co., Inc., | |
| Defendants. | |

Plaintiff Infinque Jamison brings this action on behalf of herself and all others similarly situated against Defendants Arizona Beverages USA LLC and Hornell Brewing Co., Inc. (collectively "Arizona" or "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This case arises from Defendants' deceptive and misleading practices with respect to its marketing and sale of their fruit snack products (the "Products").[1]

2.      Defendants manufacture, sell, and distribute the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers – specifically the lack of preservatives in the Products.

3.      Defendants engage in a deceptive marketing campaign to convince consumers that the Products contain no preservatives in the marketing[2] and on the labeling[3] of the Products.

4.      Notably, the Product prominently states, "NO PRESERVATIVES" on the front and back:

---

[1] At the time of this filing, the following Arizona products are included in this definition: Mixed Fruit Fruit Snacks. This definition is not exhaustive, and shall include all of Defendants' products that are similarly deceptively marketed.

[2] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Products' labels, viral marketing, incentives, and websites.

[3] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP



5.      The deception lies in the fact that the Products contain preservatives.

6.      Thus, although Defendants market the Products as being preservative-free, they contain preservatives.

7.      Reasonable consumers purchased the Products believing, among other things, that they were accurately represented. Specifically, reasonable consumers believed that the Products were free of preservatives. Reasonable consumers would not have purchased the Products if they had known about the misrepresentations and omissions, or would have purchased them on different terms.

8.      Defendants violated the trust of Plaintiff and Class Members because the Products are not the preservative-free snack that Defendants' marketing and labeling represents.

9.      Relying on Defendants' representations, consumers that seek preservative-free snacks only later realize that their purchase of Defendants' Products was a fruitless endeavor.

10.     Plaintiff brings this action individually and on behalf of those similarly situated and seek to represent a National Class and a California Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits that Defendants have enjoyed from their deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendants' deceptive conduct in the labeling and marketing of the Products.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Defendants. Defendants purposefully avail themselves of the California consumer market and distribute the Products to many locations within this District and hundreds of retail locations throughout the State of California, where the Products are purchased by thousands of consumers every day.

12.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

13.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendants' Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendants conduct business in this District.

**DIVISIONAL ASSIGNMENT**

14.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland Division.

**PARTIES**

15.     Plaintiff Infinque Jamison is a citizen of California.

a.   Prior to her purchase, Ms. Jamison saw and relied on Defendants' marketing and labeling representing that the Products contained no preservatives.

b.   Ms. Jamison wished to purchase the fruit snacks for personal consumption. When Ms. Jamison saw Defendants' misrepresentations prior to and at the time of purchase, she relied on Defendants' prominent representations and claims about the Products. Specifically, that it contained no preservatives.

c.   Ms. Jamison relied on the Defendants' representations, including but not limited to, that the Products contain "NO PRESERVATIVES."

d.   Ms. Jamison understood these representations to mean that the Products were preservative-free. Had Ms. Jamison known the truth – that the Products contained preservatives – Ms. Jamison would not have purchased the Products at a premium price. If Defendants removed preservatives, or the Products were no longer deceptively labeled, Ms. Jamison would purchase the Products again in the future. Ms. Jamison brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

GOOD GUSTAFSON AUMAIS LLP

e. Ms. Jamison has purchased the Products on multiple occasions. Ms. Jamison's most recent purchase of the Products occurred in December 2022, when she purchased the Product from a Lucky Supermarket located in Hayward, CA.

16. Defendant Arizona Beverages USA LLC is a New York company with its principal place of business in Woodbury, NY.

17. Defendant Hornell Brewing, Co., Inc. is a New York corporation with its principal place of business in Woodbury, NY.

a. Defendant Hornell Brewing owns Defendant Arizona Beverages USA.

b. The marketing and labeling for the Products that Plaintiff and Class Members relied upon in making their decisions to purchase the Products was conceived, designed, prepared and/or approved by the Defendants and was disseminated by Defendants and their agents through labeling, marketing, and advertising containing the misrepresentations from their New York headquarters.

c. In committing the wrongful acts alleged herein, Defendants, in connection with their subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendants participated in the making of such representations in that they disseminated those misrepresentations or caused them to be disseminated.

CLASS ACTION COMPLAINT

18.    Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## SUBSTANTIVE ALLEGATIONS

**A. Defendants deceive consumers by misrepresenting that the Products are preservative-free.**

19.    Consumers increasingly and consciously seek out healthy foods and snacks— placing value on healthy fruit snacks that are preservative-free. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.

20.    As a result, consumers are willing to pay, and have paid, a premium for products that are preservative-free over products that contain preservatives.

21.    Companies such as the Defendants capitalize on the consumer's demand for preservative-free snacks and generate increased unit sales, revenue, and profit by making preservative-free representations.

22.    Further, consumers rely on label representations and information in making purchasing decisions.

23.    Knowing this, Defendants prominently feature preservative-free statements throughout its packaging.

24.    Notably, the Product's principal display panel prominently states, "NO PRESERVATIVES."

CLASS ACTION COMPLAINT







25.     The back of the Product additionally states, "NO PRESERVATIVES"





26.     This leads consumers to believe that the Product lacks preservatives.

27.     Based on the representations that appear in the marketing and on the packaging of the Products, Plaintiff reasonably believed that the Products were preservative-free.

28.     However, the Product contains Citric Acid, a preservative:

**INGREDIENTS**                                    ▲

FRUIT JUICE AND PUREES FROM
CONCENTRATE (PEAR, MANGO,
WATERMELON, STRAWBERRY,
PINEAPPLE, RED GRAPE,
ORANGE), GLUCOSE SYRUP,
SUGAR, MODIFIED FOOD STARCH
(CORN), GELATIN, CITRIC ACID,
NATURAL FLAVOR, DEXTROSE,
FRUIT & VEGETABLE JUICE FOR
COLOR, COLOR (PAPRIKA
OREORESIN); ASCORBIC ACID
(VITAMIN C), CARNAUBA WAX.

**B.  Citric Acid Acts as a Preservative in the Products.**

29.     The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in beverages.[4]

30.     Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels

---

[4] *See* FDA website,
https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211
.htm.

fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[5]

31.  Citric acid acts as a preservative in the Product regardless of the subjective purpose or intent for why Defendant added citric acid to the Product, including, as a flavoring agent.

32.  Even if citric acid can be used as a flavoring agent in the Product, a greater amount of citric acid is needed to act as a flavoring agent than to preserve the Product because citric acid acts as a preservative even if very low levels are contained in the Product.[6]

33.  The quantity of citric acid therefore needed to affect the flavor of the Product is more than sufficient to function as a preservative. Accordingly, Defendant's purported intent to use citric acid for flavoring has no bearing on the actual function of citric acid as a preservative.

34.  Citric acid functions as a preservative by serving as an acidulant and as an indirect antioxidant, by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect lowering their pH-level and thereby combatting microorganisms, and through sequestration. Citric acid serves these functions regardless of whether they are also being used as flavorants.[7]

---

[5] *See* Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc., Archived FDA Warning Letters (2005-2012), https://web.archive.org/web/20211128074142/https://www.fdalabelcompliance.com/letters/ucm228663.

[6] *See* Doores, S., Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods*. Marcel Dekker, Inc., New York, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf.

[7] *See* Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry*. AVI Publishing Co., Inc., 1999, p. 438.

GOOD GUSTAFSON AUMAIS LLP

35.     Citric acid still acts as a preservative even if it was intended to be used for another purpose. Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life. To help ensure this, manufacturers impose many hurdles to degradation when formulating a product. Therefore, if an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation regardless of whether it was added to the Product for other reasons.[8]

**C. Defendants perpetuate this deception in their advertising and marketing.**

36.     Defendants' deceptions are not limited to the packaging. They further the deception through marketing and advertising.

37.     For example, Defendants' website reinforces the preservative-free characteristics of the Product in the Product's description:

**DESCRIPTION**                                    ▲

From your favorite beverage to your next healthier snack time staple. AriZona Fruit Snacks gives you 100% real fruit, packed with Vitamin C and only 90 calories per serving in the perfect little package. Enjoy Fruit Punch, Mucho Mango, Grapeade, Orangeade and Watermelon in this bite-size, fat free, gluten free, preservative free and 100% guilt free treat!

38.     Instead, the Products contain preservatives.

---

[8] *See* Biesta-Peters, E., et al. *Comparing Nonsynergistic Gamma Models with Interaction Models To Predict Growth Of Emetic Bacillus Cereus When Using Combinations Of Ph And Individual Undissociated Acids As Growth-Limiting Factors*, APPLIED AND ENVIRONMENTAL MICROBIOLOGY, AMERICAN SOCIETY FOR MICROBIOLOGY, (2010), https://aem.asm.org/content/aem/76/17/5791.full.pdf.

GOOD GUSTAFSON AUMAIS LLP

39.     Defendants target their deceptions to consumers demanding health-focused products.

40.     Through targeted marketing and advertising, Defendants perpetuate the misrepresentation that their Products contain "no preservatives."

41.     As a result of their unlawful, unfair, and fraudulent advertising and marketing practices, Defendants have made millions at the expense of the public health and trust, and continue to make millions through these unfair, unlawful and fraudulent advertising and marketing practices.

**D. The Products are misbranded.**

42.     Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

43.     The presence of preservatives in the Products has a material bearing on price and consumer acceptance.

44.     Defendants' Products contain preservatives.

45.     Because the Defendants fail to reveal the basic nature and characterizing properties of the Products (specifically, the presence of preservatives), Defendants' Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

46.     Moreover, California law forbids the misbranding of food in language largely identical to that found in the FDCA.

47.     The Products are misbranded under California's Sherman Law, Cal. Health & Safety Code §§ 109875-111915. The Sherman Law expressly incorporates

GOOD GUSTAFSON AUMAIS LLP

the food labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code § 110100(a), and provides that any food is misbranded if its nutritional labeling does not conform to FDCA requirements. *See id.* § 110665; *see also id.* § 110670.

48.     The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765: or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

49.     By misrepresenting the basic nature and characterizing properties of the Products, Defendants violate these federal and state regulations and mislead Plaintiff and consumers alike.

**E. Defendants Deceive Consumers for Financial Gain.**

50.     By representing the Product has "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health…84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims

free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[9]

51.     Consumers are also willing to pay more for the Product with "no preservatives" because of the perceived higher quality, health and safety benefits associated with preservative-free foods. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 80 percent of Americans are willing to pay more for healthier foods.[10] This, coupled with the fact that global sales of healthy food products reached $1 trillion in 2017, according to Euromonitor, means consumers are eager and willing to pay more for food advertised and labeled as having "No Preservatives" like the Product.[11]

52.     Defendants' practice of capitalizing on consumers' preferences for healthier products is false and deceptive. This deception continues today, as consumers continue to purchase the Product under the mistaken belief that it is preservative-free based on Defendants' false, deceptive, and misleading labeling and advertising of the Product as having "No Preservatives."

53.     Defendants' conduct threatens consumers by using intentionally deceptive and misleading labels. Defendants' conduct also threatens other companies,

---

[9] *See, Free-From Food Trends - US - May 2015,* Mintel: World's Leading Market Intelligence Agency, http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-fromfoods-because-they-believe-them-to-be-more-natural-or-less-processed.

[10] *See We Are What We Eat: Healthy Eating Trends Around the World*, Nielson (Jan. 2015), https://web.archive.org/web/20150421053626/https://www.nielsen.com/content/dam/nielsenglobal/eu/nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Report%20-%20January%202015.pdf.

[11] *See Health and Wellness the Trillion Dollar Industry in 2017: Key Research Highlights, Euromonitor International*, https://web.archive.org/web/20220831234425/https://www.euromonitor.com/article/health-andwellness-the-trillion-dollar-industry-in-2017-key-research-highlights.

GOOD GUSTAFSON AUMAIS LLP

large and small, who "play by the rules." Defendants' conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

54.    There is no practical reason for false labeling and advertising of the Product, other than to mislead consumers as to the presence of preservatives in the Product while simultaneously providing Defendant with a financial windfall.

**F.  Reasonable consumers relied on Defendants' misrepresentations to their detriment.**

55.    Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

56.    Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

57.    Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

**G.  Defendants' wrongful conduct caused Plaintiff's and the Class Members' injuries.**

58.    Defendants know that consumers are willing to pay more for preservative-free snacks due to the perception that the snacks are higher quality and a healthier alternative to the competition.

59.    As a result of these unfair and deceptive practices, Defendants have likely collected millions of dollars from the sale of the Products that they would not have otherwise earned. Plaintiff and Class Members paid money for fruit snacks that are not what they purported to be or what they bargained for. They paid a premium

GOOD GUSTAFSON AUMAIS LLP

for the Products when they could have instead bought other, less expensive products that do not purport to be preservative-free.

60.   In making the false and misleading representations described herein, Defendants knew and intended that consumers would pay for, and/or pay a premium for, a product labeled and advertised as containing "NO PRESERVATIVES."

61.   As an immediate, direct, and proximate result of Defendants' false and misleading representations, Defendants injured the Plaintiff and the Class Members in that they:

    a.   Paid a sum of money for Products that were not what Defendants represented;

    b.   Paid a premium price for Products that were not what Defendants represented;

    c.   Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

    d.   Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

    e.   Could not be used for the purpose for which they were purchased; and

    f.   Were of a different quality than what Defendants promised.

62.   Had Defendants not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

63.   Plaintiff and the Class Members paid for Products that were purported to contain no preservatives but received Products that contained preservatives. The

GOOD GUSTAFSON AUMAIS LLP

products Plaintiff and the Class Members received were worth less than the products for which they paid.

64.     Based on Defendants' misleading and deceptive representations, Defendants were able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

65.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## CLASS DEFINITIONS AND ALLEGATIONS

66.     Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes:

a.  California Class: All persons who purchased Defendants' Products within the State of California and within the applicable statute of limitations;

b.  Nationwide Class: All persons who purchased Defendants' Products within the United States and within the applicable statute of limitations period (collectively, the "Class," "Classes," and "Class Members").

67.     Excluded from the Classes are Defendants, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to

GOOD GUSTAFSON AUMAIS LLP

whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

68.    The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendants have sold, at a minimum, hundreds of thousands of units of the Products to Class Members.

69.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.  whether Defendants misrepresented material facts concerning the Products on the packaging of every product;

b.  whether Defendants misrepresented material facts concerning the Products in print and digital marketing of every product;

c.  whether Defendants' conduct was unfair and/or deceptive;

d.  whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the Class;

e.  whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.  whether Defendants breached implied and express warranties to Plaintiff and the Class; and

g.  whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

70.     Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendants' Products bearing the preservative-free representations and Plaintiff sustained damages from Defendants' wrongful conduct.

71.     Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.

72.     Plaintiff has no interests which conflict with those of the Classes.

73.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

74.     The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

75.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Unfair Competition Law ("UCL")**
**Business and Professions Code § 17200 et seq.**
**(On Behalf of the California Class)**

76.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     Plaintiff brings this cause of action pursuant to the UCL on her own behalf and on behalf of all other persons similarly situated.

78.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

**A. Unfair Prong**

79.     Under the UCL a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

80.     Defendants' advertising and labeling of the Products as being made with no preservatives when the Products contain no preservatives, is false, misleading, and deceptive.

81.     Defendants' false advertising of the Products causes injuries to consumers, who do not receive the promised benefits from the Products in proportion to their reasonable expectations.

82.     Through false, misleading, and deceptive labeling of the Products, Defendants seek to take advantage of consumers' desire for preservative-free food products, while reaping the financial benefits of manufacturing lower quality Products.

83.     When Defendants label and market the Products as being made with "no preservatives" it provides false promises to consumers and stifles competition in the marketplace.

84.     Consumers cannot avoid any of the injuries caused by Defendants' false and misleading advertising of the Products.

85.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under the UCL. The courts "weigh the utility of the defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F. 3d 1152, 1169 (9th Cir. 2012).

86.     Defendants' material misrepresentations and omissions result in financial harm to consumers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of its harm.

87. Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

88. As described herein, Defendants' conduct impacts the public health of California citizens and the competitive landscape for Defendants' competitors that act as good faith market participants.

89. Defendants' advertising and labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

90. Defendants knew or should have known of their unfair conduct.

91. As alleged in the preceding paragraphs, the material misrepresentations by Defendants detailed above constitute an unfair business practice within the meaning of the UCL.

92. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. Defendants could have marketed the Products without making any false and deceptive statements about the Products' ingredients.

93. All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

94. Pursuant to Business & Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products. Plaintiff and California Class Members additionally request an order

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

awarding Plaintiff and California Class Members restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

95.     Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff paid an unwarranted premium for the Products.

**B. Fraudulent Prong**

96.     The UCL considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

97.     Defendants' labeling and advertising of the Products as being made with no preservatives is likely to deceive members of the public into believing that the Products contain no preservatives.

98.     Defendants' advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

99.     Defendants knew or should have known of their fraudulent conduct.

100.     As alleged in the preceding paragraphs, the material misrepresentations and omissions by Defendants detailed above constitute a fraudulent business practice in violation of the UCL.

101.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants

could have refrained from marketing and labeling the Products as being made with no preservatives.

102.    All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

103.    Pursuant to Business & Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the California Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

104.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiff and the California Class paid an unwarranted premium for the Products. Plaintiff and the California Class would not have purchased the Products if they had known that the Products contained preservatives.

**C. Unlawful Prong**

105.    The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

106.    Defendants' labeling and advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, et seq. (Consumer

GOOD GUSTAFSON AUMAIS LLP

Legal Remedies Act), California Business and Professions Code Section 17500, et seq. (False Advertising Law), Cal. Heath & Saf. Code § 110765 et seq. (the "Sherman Law"), and the common law as described herein.

107.   Defendants' packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

108.   Defendants knew or should have known of their unlawful conduct.

109.   As alleged in the preceding paragraphs, the misrepresentations by Defendants detailed above constitute an unlawful business practice within the meaning of the UCL.

110.   There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. Defendants could have refrained from misrepresenting the true characteristics of the Products.

111.   All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

112.   Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the California Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the

existence and significance of said misrepresentations in an amount to be determined at trial.

113.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that Defendants purposely deceived consumers into believing that the Products contained no preservatives.

114.    As a result of the business acts and practices described above, Plaintiff and members of the California Class, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

115.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Class are further entitled to prejudgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Class are entitled to interest in an amount according to proof.

**COUNT II**
**Violation of California's False Advertising Law ("FAL")**
**Business and Professions Code § 17500 et seq.**
**(On Behalf of the California Class)**

116.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

117.    Plaintiff brings this cause of action pursuant to the FAL on her own behalf and on behalf of all other persons similarly situated.

118.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

119.    Defendants knowingly disseminated misleading claims regarding the Products in order to mislead the public about the presence of preservatives in the Products.

120.    Defendants controlled the labeling, packaging, production and advertising of the Products. Defendants knew or should have known, through the exercise of reasonable care, that its representations and omissions about the characteristics and ingredients of the Products were untrue, deceptive, and misleading.

121.    Defendants understand that the public values preservative-free representations, and this is shown by the numerous preservative-free statements that are prominently featured throughout the Products' packaging.

122.    Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

123.    As a direct and proximate result of Defendants' conduct alleged herein in violation of the FAL, Plaintiff and members of the California Class, pursuant to §

GOOD GUSTAFSON AUMAIS LLP

17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of its misrepresentations.

124.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendants' false representations. Plaintiff purchased the Products in reliance upon the claims and omissions by Defendants that the Products contain "no preservatives," as represented by Defendants' labeling and advertising. Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false and misleading.

125.    Plaintiff and members of the California Class also request an order requiring Defendants to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

**COUNT III**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Business and Professions Code § 1750 et seq.**
**(Injunctive Relief Only)**
**(On Behalf of the California Class)**

126.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

127.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against the Defendants.

128.    At all times relevant hereto, Plaintiff and members of the California Class were "consumer[s]," as defined in Civil Code section 1761(d).

129.    At all times relevant hereto, Defendants each constituted a "person," as defined in Civil Code section 1761(c).

GOOD GUSTAFSON AUMAIS LLP

130.    At all times relevant hereto, the Products manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in Civil Code section 1761(a).

131.    The purchases of the Products by Plaintiff and members of the California Class were and are "transactions" within the meaning of Civil Code section 1761(e).

132.    Defendants disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that the Products contained "NO PRESERVATIVES."

133.    Defendants' representations violate the CLRA in at least the following respects:

a.  In violation of Civil Code § 1770(a)(5), Defendants represented that the Products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

b.  In violation of Civil Code § 1770(a)(7), Defendants represented that the Products are of a particular standard, quality, or grade, which they are not; and

c.  In violation of Civil Code § 1770(a)(9), Defendants advertised the Products with an intent not to sell the products as advertised.

134.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendants of their alleged violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct its business practices. Notice was sent via certified mail, return receipt requested on February 3, 2023. As of the date of filing this complaint, Defendants have not responded. Accordingly, if after 30 days no satisfactory response to resolve

this litigation on a class-wide basis has been received, Plaintiff will seek leave to amend this request to seek restitution and actual damages as provided by the CLRA.

135.    Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

136.    Defendants knew or should have known that their Products did not contain the claimed characteristics because Defendants manufactured, marketed and sold their Products without those characteristics that they claimed. Defendants knew or should have known that their representations about their products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiff and members of the California Class.

137.    Defendants' actions as described herein were done with conscious disregard of Plaintiff's and California Class Members' rights and was wanton and malicious.

138.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still representing that their Products have characteristics which they do not have.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the National Class)**

139.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

140.    By means of Defendants' wrongful conduct alleged herein, Defendants knowingly sold the Products to Plaintiff and Class Members in a manner that was unfair, unconscionable, and oppressive.

141.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiff and the Class Members. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

GOOD GUSTAFSON AUMAIS LLP

142.   As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

143.   Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

144.   Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

145.   The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class. Defendants should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendants.

**RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf the Class Members, seeks judgment and relief against Defendants, as follows:

a)  For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as a representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b) For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all causes of action so triable.

Dated: February 3, 2023

**Good Gustafson Aumais LLP**

/s/ J. Ryan Gustafson
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**Shenaq PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

*Pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT